UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
:
UNITED STATES OF AMERICA                                            :
                                                                   :
                                                                   :
                        -v-                                        :
                                                                   :
JULIAN HARRIS,                                                     :
                        Defendant.                                 :
                                                                   :
--------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: DEC 2 0 2013

13 Cr. 556 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

Before the Court is Defendant Julian Harris's motion to suppress a firearm found on his person during a stop-and-frisk, and post-arrest statements that he made about the firearm. (Dkt. No. 12). For the reasons set forth below, the Court denies the motion in its entirety.

I.      **Procedural History**

The Defendant was indicted on July 24, 2013, on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On October 10, 2013, the Defendant filed a motion to suppress (1) the firearm that forms the basis of the charge against him and (2) post-arrest statements concerning his possession of that firearm.

The Court held an evidentiary hearing on the Defendant's motion on November 8, 2013. The following individuals, members of the New York Police Department ("NYPD"), testified at the hearing: Officer Patrick Jean, Officer Abraham Villavizar, and Sergeant Michael Gee. Following the hearing, the Court received briefing from the parties. (Dkt. Nos. 25, 26).[1] The

---

[1] Counsel for the Defendant filed his briefing papers late, without the Court's permission to do so. Nevertheless, the Court accepted the late filing and fully considered all arguments made therein.

Defendant submitted an affidavit in support of his motion at the time it was originally filed, but he did not testify at the suppression hearing.

Post-hearing oral argument on the Defendant's motion was scheduled for December 18, 2013, at 4:00 PM. However, the Defendant did not appear in the courtroom at that time; he arrived about an hour late, after the conference had been adjourned. Subsequently, the Court determined that oral argument was unnecessary to its disposition of the instant motion. (Dkt. No. 29). The Court's findings of fact and conclusions of law are set forth below.

## II.    Findings of Fact

As a preliminary matter, the Court found the three police officers who testified at the evidentiary hearing to be credible in their testimony. Although there were some discrepancies between their testimony and their memories were not perfect, they answered questions forthrightly, provided reasonable responses and explanations, and appeared credible and candid in all respects. Based on the testimony and evidence presented at the hearing, the Court makes the following findings of fact.

The incident in question took place on May 30, 2013. NYPD Officers Jean, Villavizar, and Gee were on patrol in an unmarked police car. Officer Jean was driving, Sergeant Gee was in the front passenger seat, and Officer Villavizar was in the rear passenger seat. (Tr. 13–14, 57). At approximately 1:00 AM, driving westbound on Burke Avenue in the Bronx, the patrol car approached the intersection of Burke and Holland Avenues. Burke Avenue is a two-way street. The westbound lane has two lanes of traffic and also a parking lane next to the curb. (Tr. 17; Gov't Ex. 1). This is a high-crime area. (Tr. 11, 56).

Upon approaching the intersection, the police officers noticed a man running across Burke Avenue and then, once across, continuing eastbound on Burke, on the south side of the

2

street. (Tr. 16, 57–58). The officers noted the "very fast" speed at which the man was running

and that he had his head "in a down position," with his "chin . . . to his chest." (Tr. 16).

Turning their attention to the place that the officers believed the runner had fled from,

they observed a black Toyota Camry. The Camry was double-parked and the tail was partially in

the intersection. (Tr. 17, 59–60, 101). Officer Jean observed the Defendant standing outside of

the Camry, towards the rear of the vehicle. Because of the positioning of the two men and the

car, Officer Jean was only able to see the Defendant from "the chest area up." (Tr. 19). He was

close enough, however, to make eye contact with the Defendant when the Defendant looked in

his direction. Following that eye contact, the Defendant made a counterclockwise movement,

turning away from Officer Jean's direction. The Defendant then bent his arm at the elbow "as if

[the Defendant] was placing something in his shirt or jacket or pants." (Tr. 20). At that point,

Officer Jean watched the Defendant enter the Camry on the passenger side.

Importantly, upon making these observations, Officer Jean stated to Sergeant Gee and

Officer Villavizar that he suspected that the Defendant may have a firearm. (Tr. 23–24). Officer

Villavizar testified that he recalled Officer Jean stating this observation. (Tr. 61). Although

Sergeant Gee testified that he did not recall hearing Officer Jean make this statement, Sergeant

Gee himself saw the Defendant make the same set of motions and came to the same conclusion

that the Defendant might have a weapon. (Tr. 106).

Following the Defendant's entry into the Camry, the car pulled away from where it had

been standing and changed from the right lane to the left lane without signaling. At that point,

the officers stopped the Camry. As the Camry came to a stop, Officer Jean told his partners "to

be careful." He testified that he said this because of his belief that there was a weapon inside the

vehicle. (Tr. 25).

3

Upon stopping, the Defendant exited the vehicle, but returned to his seat after being ordered to do so by Sergeant Gee.  Officer Jean approached the driver's side of the car and asked for driver's license, registration, and insurance papers.  The driver indicated that the car belonged to her mother.  During this time, Officer Jean kept his focus on the hands of the car occupants because of his concern that there was a weapon in the vehicle.  (Tr. 26).  He observed the Defendant "fooling around as he was trying to search for something."  (Tr. 28).  In response, Officer Jean instructed him to stop moving and keep his hands in plain sight.  (Tr. 28, 65).  Officer Jean also asked the driver if she knew who the person running across the intersection was.  The driver responded affirmatively, indicating that the person was a friend of hers running to the liquor store.  (Tr. 27).

Officer Villavizar had approached the Camry from the passenger side.  (Tr. 62).  He asked the Defendant if he knew the identity of the person running across the intersection, but the Defendant's response was interrupted by the driver.  (Tr. 64).  Upon questioning, the Defendant indicated to Officer Villavizar that the car belonged to him, but he could not produce ownership documents.  (Tr. 64, 65).  While "searching" for documentation, however, Officer Villavizar noticed the Defendant acting nervous and fidgeting.  (Tr. 65).

At this point, Officer Villavizar asked the Defendant to step out of the Camry.  After the Defendant exited the car, Officer Villavizar directed him to the back of the vehicle.  He did so by placing his hand lightly on the Defendant's lower back in order to guide him toward the rear of the car.  (Tr. 68).  In doing so, Officer Villavizar felt a hard object that he immediately believed to be the grip of a firearm.  (Tr. 68).  So as not to alert the Defendant to what he believed he felt, Officer Villavizar asked the Defendant whether the object was a cell phone.  When the

4

Defendant responded that it was, Officer Villavizar secured the Defendant's hands behind his back and recovered a firearm from his waistband. (Tr. 69).

Officer Villavizar conducted a post-arrest interview of the Defendant at the police station. The Defendant waived his *Miranda* rights and made statements describing why and when the Defendant had procured the firearm. (Tr. 69–72).

The Defendant did not testify at the suppression hearing. In an affidavit submitted in advance of the evidentiary hearing, the Defendant contended that after being pulled over by the officers, he complied with direction, answered questions, and did not behave in a suspicious manner. (Harris Aff. ¶ 7). Upon being ordered out of the car, his affidavit states that he was immediately directed by Officer Villavizar to turn around and put his hands on the roof of the car. (Harris Aff. ¶ 8). He alleges that Officer Villavizar asked if he had any sharp objects and then frisked him, at which point the firearm was located and he was arrested.

As noted, the Defendant did not testify at the hearing. To the extent that his version of events is inconsistent with that of the officers, his counsel urges the Court to conclude that all three officers testified falsely in differing respects. First, defense counsel contends that Officer Jean's testimony that his initial observations of the Defendant led him to believe that the Defendant might have a gun should not be believed. But the Court found this testimony credible, and it was corroborated by Officer Villavizar's testimony that he recalls Officer Jean stating that the Defendant might have a gun. The fact that Officer Jean's sight of the Defendant was partially obstructed by the trunk of the car does not undermine his further testimony that he saw the Defendant engage in an arm movement consistent with tucking a weapon into his clothing.

Moreover, Officer Jean's observations were consistent with Sergeant Gee's testimony that upon his own observations of the Defendant, Sergeant Gee also came to the conclusion that

5

the Defendant may have had a weapon.  On this point, defense counsel urges the Court to disbelieve Sergeant Gee, although he also concedes that Sergeant Gee's testimony is "generally credible." (Def. Br. 9 n.4).  The Court agrees that Sergeant Gee was generally credible, and indeed concludes that his testimony on this specific point was credible as well.

Lastly, defense counsel contends that Officer Villavizar should not be believed regarding his discovery of the weapon on the Defendant's person.  In support of this argument, defense counsel asserts that Sergeant Gee testified that the Defendant was searched immediately upon exiting the car.  But that is an inaccurate characterization of Sergeant Gee's testimony, which, consistent with Officer Villavizar's testimony, indicated that the search of the Defendant did not happen immediately.  (Tr. 104).  In any case, as discussed further below, this factual dispute is ultimately immaterial to the Court's legal conclusions.

Finally, at several points during the hearing and in post-hearing briefing, defense counsel has attempted to undermine the officers' credibility by noting that certain facts elicited in testimony were not included in the Government's notes taken during interviews with the officers. The Court is not persuaded.  First, the notes are not a transcript.  Thus, it is unsurprising that the notes do not reflect all that Officer Jean recalls he recounted to the Government.  Second, the notes were taken on the day that the complaint was sworn out against the Defendant and were not made in the context of preparation for a suppression hearing.  As the Government points out, the fact that the officers actually found a gun on the Defendant explains why the notes do not indicate, for example, that Officer Jean told his fellow officers that he believed the Defendant was armed.  At base, nothing contained in or omitted from the notes undermined the generally credible testimony provided by the officers.

### III.    Conclusions of Law

In light of the foregoing findings of fact, the Court reaches the following conclusions of law.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." That protection extends to persons travelling in vehicles. *See United States v. Cortez*, 449 U.S. 411, 417 (1981). To stop a vehicle, police officers must have reasonable suspicion for the stop. *See id.* at 417–18; *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Here, the Defendant concedes that the officers' stop of the Camry was valid based on a reasonable suspicion of a traffic violation. (Def. Br. 1 n.1).

Upon legally stopping the car, the officers were permitted to require the Defendant to exit the car, *see Maryland v. Wilson*, 519 U.S. 408, 415 (1997), and if they reasonably suspected that the Defendant was armed and dangerous, they were permitted to frisk him for weapons, *see Michigan v. Long*, 463 U.S. 1032, 1048–49 (1983); *Arizona v. Johnson*, 555 U.S. 323, 330 (2009); *United States v. Padilla*, 548 F.3d 179, 189 (2d Cir. 2008). To justify the frisk, the officers' reasonable suspicion must have been based on "specific and articulable facts." *United States v. Jaramillo*, 25 F.3d 1146, 1151 (2d Cir. 1994). A valid frisk must be justified at its inception. *Florida v. J.L.*, 529 U.S. 266, 271 (2000). In assessing whether the officers had a legally sufficient basis to frisk the Defendant, the Court must consider "the totality of the circumstances," evaluated "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Colon*, 250 F.3d 130, 134 (2d Cir. 2001) (quoting *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000)) (internal quotation marks omitted). It is the Government's burden to prove, by a preponderance of the

7

evidence, that the search of the Defendant was based upon a reasonable suspicion that he was armed and posed a danger. *See United States v. Bristol*, 819 F. Supp. 2d 135, 142 (E.D.N.Y. 2010); *United States v. Echevarria*, 692 F. Supp. 2d 322, 332 (S.D.N.Y. 2010).

The Government has met its burden in this case. Even before Officer Villavizar felt a weapon tucked into the Defendant's waistband, the officers reasonably believed that the Defendant was armed and dangerous. First, prior to the car stop, the officers had observed someone running quickly away from the car, suggesting to them that the person had been in some kind of danger. Second, Officer Jean and Sergeant Gee both observed the Defendant turn away and make a movement suggesting that an object was being placed in the Defendant's clothing. These experienced officers were reasonable in their belief that the observed movement suggested the presence of a weapon. *See United States v. Bowden*, 45 F. App'x 61, 63 (2d Cir. 2002). Moreover, Officer Villavizar, who heard Officer Jean make a statement regarding this observation, reasonably relied upon the warning. *See Colon*, 250 F.3d at 135. Third, the car, from which a man was just seen running quickly, was in a high crime area, and was involved in two traffic violations. *See United States v. Andrade*, 551 F.3d 103, 113 & n.9 (1st Cir. 2008) (that an area is high-crime may be considered as part of overall circumstances in assessing reasonable suspicion for stop and frisk). Fourth, upon questioning, the officers observed the passengers as nervous, fidgety, and evasive, which further factored into their reasonable suspicion of dangerousness. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *Jaramillo*, 25 F.3d at 1151 ("suspicious behavior" can be grounds for stopping and frisking an individual).

Moreover, the officers' reasonable suspicion was substantially strengthened upon Officer Villavizar's feeling what he believed to be a weapon as a result of his incidental touching of the Defendant while guiding him to the rear area of the car for further questioning. At that moment,

8

it is beyond contention that Officer Villavizar had a sufficient basis to search the Defendant, which he did and then retrieved the gun.

With respect to this point, the Government argues that the incidental touching was permissible under the "plain-touch" doctrine. (Gov't Br. 15). The Defendant contests that the incidental touching occurred, arguing instead that Officer Villavizar frisked the Defendant without first placing his hand on the Defendant's lower back as he testified at the hearing. (Def. Br. 11–12). As indicated above, the Court has found otherwise. However, the Defendant also argues that even if Officer Villavizar did touch the Defendant on his lower back, this incidental touching still amounted to a search, and that the plain-touch doctrine is inapplicable. (Def. Br. 12–13). Having concluded that the officers had reasonable suspicion for a frisk before Officer Villavizar first touched the Defendant, the Court need not decide the issue.

Finally, in light of the Court's conclusion that the officers were justified in frisking the Defendant for a weapon, the Defendant's post-arrest statements did not result from an illegal search or seizure, and there is no basis for suppressing them.

## IV.   Conclusion

For the foregoing reasons, the Court denies the Defendant's motion to suppress. This opinion resolves Docket No. 12.

Trial in this matter is currently scheduled for January 27, 2014. In light of this trial date, the parties are hereby ordered to appear for a final pre-trial conference on January 21, 2014, at 11:00 AM. On or before January 3, 2014, the parties shall submit: (1) an agreed upon one-to-two-paragraph description of the case to be read to potential jurors during voir dire, (2) any voir dire requests, and (3) any requests to charge. With respect to requests to charge, the parties shall indicate whether the request is made jointly and, if not, whether a party objects to a particular

9

request.  Any party objecting to a request shall indicate the legal basis for their objection.  Any 404(b) motions or motions *in limine* must be filed by January 3, 2014.  Opposition papers, if any, shall be filed by January 10, 2014, and replies, if any, shall be filed by January 14, 2014.

       SO ORDERED.

Dated: December 20, 2013
      New York, New York

                               ALISON J. NATHAN
                          United States District Judge